The order below is hereby signed.

Signed: November 24 2020



_____
Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PATRICIA WINIFRED PRUDHOMME | ) | Case No. 20-00041-ELG |
| DU HANCOURT, | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| WENDELL WEBSTER, Chapter 7 Trustee | ) | |
| for PATRICIA WINIFRED PRUDHOMME | ) | |
| DU HANCOURT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. Proc. No. 20-10025-ELG |
| | ) | |
| TCA TRUSTCORP AMERICA, as | ) | |
| trustee of the Prudhomme Credit Shelter | ) | |
| Trust a/k/a the Credit Shelter Trust, | ) | |
| | ) | |
| PRUDHOMME CREDIT SHELTER) | | |
| TRUST a/k/a the Credit Shelter Trust, | ) | |
| | ) | |
| PATRICIA WINIFRED PRUDHOMME | ) | |
| DU HANCOURT, | ) | |
| | ) | |
| GUY JUSTIN PRUDHOMME DU | ) | |
| HANCOURT A/K/A GUY JUSTIN | ) | |
| PRUDHOMME, | ) | |
| | ) | |
| JESSICA ANNE PRUDHOMME DU | ) | |
| HANCOURT A/K/A JAMES GUY | ) | |
| PRUDHOMME, | ) | |
| | ) | |
| JO-ANNE CLAIR PRUDHOMME DU | ) | |
| HANCOURT A/K/A JO-ANNE CLAIR | ) | |
| PRUDHOMME, | ) | |

|  |  |
|---|---|
| JEREMY GUY PRUDHOMME DU HANCOURT A/K/A JEREMY GUY PRUDHOMME, | ) ) ) ) |
| JOSEPHINE JANE PRUDHOMME DU HANCOURT A/K/A JOSEPHINE JANE PRUDHOMME, and | ) ) ) ) |
| JAMES GUY PRUDHOMME DU HANCOURT A/K/A JAMES GUY PRUDHOMME | ) ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM DECISION AND ORDER
## DISMISSING AMENDED COMPLAINT WITHOUT PREJUDICE

Wendell W. Webster, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of

Patricia Winifred Prudhomme du Hancourt (the "Debtor"), filed a six-count *Amended Complaint*

*for Declaratory Relief to Avoid Transfers, for Turnover to Recover Property, and for Related*

*Relief* (ECF No. 11) (the "Amended Complaint") pursuant to sections 105, 544, 548 and 550 of

Title 11 of the United States Code (the "Bankruptcy Code"), against TCA TrustCorp America

("TCA"), as Trustee of the Prudhomme Credit Shelter Trust a/k/a the Credit Shelter Trust

("Credit Shelter Trust"), the Credit Shelter Trust itself,[1] the Debtor, and various purported

beneficiaries of the Credit Shelter Trust[2] (collectively, the "Defendants"), thereby commencing

---

[1]

For the reasons stated on the record at the October 28, 2020 hearing, by its *Order Granting TCA TrustCorp America's Motion to Dismiss Amended Complaint as to the Prudhomme Credit Shelter Trust* (ECF No. 22), the Court granted the TCA Motion to Dismiss as to the Credit Shelter Trust only.

[2]

The purported beneficiaries of the Credit Shelter Trust named as defendants in the Amended Complaint are Guy Justin Prudhomme du Hancourt a/k/a Guy Justin Prudhomme; Jessica Anne Prudhomme du Hancourt a/k/a James Guy Prudhomme; Jo-Anne Clair Prudhomme du Hancourt a/k/a Jo-Anne Clair Prudhomme; Jeremy Guy Prudhomme du Hancourt a/k/a Jeremy Guy Prudhomme; Josephine Jane Prudhomme du Hancourt a/k/a Josephine Jane Prudhomme; and James Guy Prudhomme du Hancourt a/k/a James Guy Prudhomme (the foregoing, collectively, the "Non-Debtor Beneficiaries")

the above-captioned adversary proceeding (this "Adversary Proceeding"). Before the Court are the *TCA TrustCorp America's Motion to Dismiss Amended Complaint on Behalf of Itself as Trustee and the "Credit Shelter Trust"* (ECF No. 12) (the "TCA Motion to Dismiss") filed by TCA and the *Motion to Dismiss Amended Complaint* (ECF No. 13) (the "Debtor's Motion to Dismiss" and, together with the TCA Motion to Dismiss, the "Motions to Dismiss") filed by the Debtor, by counsel. The Court conducted a hearing (the "Hearing") on the Motions to Dismiss on October 28, 2020. For the reasons discussed below, the Court will grant the Motions to Dismiss as to Counts I, IV, V and VI; and will dismiss Counts I, IV, V and VI of the Amended Complaint without prejudice. The Motions to Dismiss are denied as to Counts II and III of the Amended Complaint.

This Memorandum Decision sets forth the Court's findings of facts and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[3] The Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H) and (O). Venue is appropriate pursuant to 28 U.S.C. § 1409.

### The Trustee's Allegations in the Amended Complaint

As more fully discussed herein, "[w]hen reviewing the grant of a motion to dismiss, the court 'must treat the complaint's factual allegations as true, and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240–41 (D.C. Cir. 2018) (alterations in original) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). With this principle in mind and

---

[3]

Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

for purposes of determining the Motions to Dismiss only, the Court treats the following factual allegations as true.

On January 27, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Columbia, thereby commencing the underlying bankruptcy case. Voluntary Petition for Individuals Filing for Bankruptcy, *In re Prudhomme du Hancourt*, Case No. 20-00041-ELG, ECF No. 1. The Trustee was appointed to administer the Debtor's bankruptcy estate and continues to serve as such. Am. Compl. ¶ 5, ECF No. 11 at 3.

Prior to the Petition Date, on February 27, 2012, the Debtor, and her husband, Louis Hubert Guy Prudhomme du Hancourt ("Guy"), executed the Trust Declaration for Louis Hubert Guy Prudhomme du Hancourt and Patricia Winifred Prudhomme du Hancourt (the "Trust Declaration"),[4] thereby creating the Guy and Patricia Prudhomme Living Trust, or The Prudhomme Family Trust (the "Family Trust") under Virginia law. Am. Compl. ¶ 7, ECF No. 11 at 3-4. Guy and the Debtor served as the initial trustees of the Family Trust. Am. Compl. ¶ 7, ECF No. 11 at 4. The Family Trust was settled by both Guy and Debtor, with the survivor of Guy and Debtor as its primary beneficiary and the Non-Debtor Beneficiaries as contingent beneficiaries. Am. Compl. ¶ 8, ECF No. 11 at 4. The Family Trust was funded by two (2) separate $2 million life insurance policies on the life of Guy: (1) MetLife Insurance Company USA ("MetLife") Policy No. xxx-xxx-775 UT reportedly purchased by Guy on or about March 19, 2015 (the "MetLife/Brighthouse Policy"); and (2) Genworth Life and Annuity Insurance

---

[4] A copy of the Trust Declaration is attached as Exhibit A to the TCA Motion to Dismiss. TCA Mot. Dismiss Ex. A, ECF No. 12-1 at 1-8. No party has challenged the validity or authenticity of such document.

Company ("Genworth") Policy No. XXXX182 reportedly purchased by Guy on or about December 26, 2013 (the "Genworth Policy").[5] Am. Compl. ¶ 7, ECF No. 11 at 4.

The Trust Declaration has two sections at issue in this Adversary Proceeding. First, section 10 of the Trust Declaration provides:

> Every beneficiary hereof is hereby restrained from anticipating, assigning, transferring, selling or otherwise disposing of his interest in this Trust Estate, and every beneficiary is without power to anticipate, assign, transfer, sell or otherwise dispose of his interest in this Trust Estate. No such anticipation, assignment, transfer, sale or other disposition by a Beneficiary of any interest in this Trust Estate may pass any right, title o [sic] interest of any nature or kind to this Trust Estate. No interest of the Beneficiary hereunder shall be subject to the claims of creditors or other persons, nor to any bankruptcy proceeding, nor to any other liabilities or obligations of any Beneficiary.

Am. Compl. ¶ 12, ECF No. 11 at 5. Second, section 2 of the Trust Declaration gave the surviving spouse the power to disclaim as a beneficiary under the Family Trust, in which case the assets were placed in a new trust, the Credit Shelter Trust, for the benefit of the surviving spouse. Am. Compl. ¶ 9, ECF No. 11 at 4. The trustee of the Credit Shelter Trust was required to turn over to the surviving spouse the net income of the Credit Shelter Trust, plus was given the discretion to pay to the surviving spouse such additional principal of the Credit Shelter as the trustee deemed "proper to provide for the survivor's health, education, support and maintenance." Am. Compl. ¶ 9, ECF No. 11 at 4.

Guy died on May 23, 2017. Am. Compl. ¶ 10, ECF No. 11 at 4. The Debtor disclaimed her right to the Family Trust on August 4, 2017. Am. Compl. ¶ 10, ECF No. 11 at 4. The

---

[5] The Amended Complaint fails to allege that the Family Trust contained any assets other than the contingent right to receive the proceeds of the two life insurance policies. In subsequent pleadings and at the Hearing, the Trustee alleged that Trust disclaimer, as described more fully herein *infra*, did more than simply disclaim the life insurance proceeds, but instead converted the res of the Family Trust into the res of the Credit Shelter Trust. This argument is facially inconsistent with the allegations of the Amended Complaint.

proceeds of the MetLife/Brighthouse and Genworth Policies were paid to the Family Trust or Credit Shelter Trust. Am. Compl. ¶ 10, ECF No. 11 at 4.

The Debtor has been insolvent since some unspecified point in time prior to Guy's death. Am. Compl. ¶ 14, ECF No. 11 at 5. The Trustee alleges that in her actions as trustee of the Trust,[6] Am. Compl. ¶ 13, ECF No. 11 at 5, including the spendthrift provisions in the Credit Shelter Trust, and, instead, used the Credit Shelter Trust as her "personal piggy bank," Am. Compl. ¶ 12, ECF No. 11 at 5. Between 2017 and the Petition Date, the Debtor allegedly depleted over $3 million from the Credit Shelter Trust, including disbursements of $500,000.00 to her son in August 2019 and $20,000 to her daughter in October 2019. Am. Compl. ¶ 12, ECF No. 11 at 5. The Debtor used the Credit Shelter Trust to purchase a luxury home in Washington, D.C., then sold the home and placed the proceeds in the Credit Shelter Trust. Am. Compl. ¶ 12, ECF No. 11 at 5.

On October 10, 2019, the Debtor entered into a nonjudicial settlement with the Non-Debtor Beneficiaries by which she and they consented to the appointment of new trustee for the Credit Shelter Trust. Am. Compl. ¶ 12, ECF No. 11 at 5. Accordingly, the Debtor resigned as trustee on October 16, 2019, and appointed TCA as the successor trustee of the Credit Shelter Trust. Am. Compl. ¶ 12, ECF No. 11 at 5.

Based upon the foregoing and only upon the foregoing factual allegations, the Trustee has alleged six counts in his Amended Complaint against the Defendants. By Count I, the Trustee seeks a declaration that the Trust[7] is the alter ego of the Debtor and that the asserts of the

---

[6] The Trustee fails to identify the "Trust" to which he refers. For purposes of ruling on the Motions to Dismiss, the Court will define "Trust" as used in paragraph 13 of the Amended Complaint to include both the Family Trust and the Credit Shelter Trust.

[7] Again, the Trustee refers to the "Trust," as opposed to the Family Trust or the Credit Shelter Trust, *See* note 6 *supra*.

Credit Shelter Trust are assets of the estate,[8] and as property of the estate, the Defendants be ordered to turn over the assets of the Credit Shelter Trust. Counts II and IV seek a determination that the Debtor's resignation as trustee of the Credit Shelter Trust and the Debtor's disclaimer, respectively, were avoidable fraudulent transfers pursuant to section 548 of the Bankruptcy Code, and seek judgment in the amount of such transfers pursuant to section 550 of the Bankruptcy Code. Counts III and V seek a determination that the Debtor's resignation as trustee of the Credit Shelter Trust and the Debtor's disclaimer, respectively, were avoidable fraudulent transfers pursuant to section 28-3104 and 28-3105 of the D.C. Code and section 544 of the Bankruptcy Code, and seek avoidance of such transfers pursuant to section 550 of the Bankruptcy Code. Finally, by Count VI, the Trustee seeks an order substantively consolidating the Debtor's estate and the Credit Shelter Trust pursuant to section 105 of the Bankruptcy Code.

## Analysis

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rules"), as made applicable to this Adversary Proceeding pursuant to Bankruptcy Rule 7012, a party may file a motion to dismiss a complaint if it "fail[s] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. For a complaint to survive such a motion to dismiss pursuant to Civil Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A complaint can establish a facially plausible claim only if it sets forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[8] Notably, outside of this claim for "alter ego" liability, the Trustee has not sought a declaratory judgment that the res of the Credit Shelter Trust is property of the estate nor has the Trustee brought a cause of action pursuant to section 542 of the Bankruptcy Code to recover such property. Therefore, whether the corpus of the Credit Shelter Trust constitutes property of the estate subject to turnover is not an issue properly before this Court.

misconduct alleged.'" *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Neither "a formulaic recitation of the elements of a

cause of action" nor "'naked assertion[s]' devoid of 'further factual enhancement'" satisfy this

standard. *Iqbal*, 556 U.S. at 678 (alterations in original) (quoting *Twombly*, 550 U.S. at 555,

557). "In determining a complaint's plausibility, we accept as true all of the complaint's factual

allegations and draw all reasonable inferences in favor of the plaintiffs. However, we 'need not

accept inferences unsupported by facts or legal conclusions cast in the form of factual

allegations.'" *Owens*, 897 F.3d at 272 (quoting *City of Harper Woods Emps.' Ret. Sys. v. Olver*,

589 F.3d 1292, 1298 (D.C. Cir. 2009)) (citing *Atherton v. D.C. Office of Mayor*, 567 F.3d 672,

677 (D.C. Cir. 2009)). "Nor must we accept as true the complaint's factual allegations insofar as

they contradict exhibits to the complaint or matters subject to judicial notice." *Kaempe v. Myers*,

367 F.3d 958, 963 (D.C. Cir. 2004).

"In determining whether a complaint fails to state a claim, we may consider only the

facts alleged in the complaint, any documents either attached to or incorporated in the complaint

and matters of which we may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial

Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). This includes "documents 'appended to [a] motion to

dismiss and whose authenticity is not disputed' if they are 'referred to in the complaint and are

integral' to plaintiff's claim" *Aguirre v. S.E.C.*, 671 F. Supp. 2d 113, 117 (D.D.C. 2009) (quoting

*Kaempe*, 367 F.3d at 965).

In this Adversary Proceeding, the Trustee's theories and claims have evolved as the

parties briefed the Motions to Dismiss and argued before the Court. However, in ruling upon the

Motions to Dismiss, the Court is limited to considering (i) the Trustee's allegations as pled in the

Amended Complaint and any reasonably inferences therefrom, *see Owens*, 897 F.3d at 272

(citations omitted); (ii) any matters subject to judicial notice, *see St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; and (iii) any documents appended to the Motions to Dismiss whose authenticity is not disputed that are both referred to in the Amended Complaint and are integral to the Trustee's claims, *see Aguirre v. S.E.C.*, 671 F. Supp. 2d at 117 (quoting *Kaempe*, 367 F.3d at 965). As such, the Court may consider the exhibits appended to TCA's Motion to Dismiss without converting Motions to Dismiss to a motion for summary judgment. However, the Court may not consider any arguments, factual allegations, or theories that do not have a reasonable basis in the Amended Complaint.

## I.    Count I: Alter Ego/ Turnover

By his *Opposition to Debtor's and TCA TrustCorp America's Motion to Dismiss Amended Complaint* [ECF No. 15], the Trustee concedes that Virginia law applies to his "claim" for alter ego.[9] It is an unsettled issue under Virginia law whether an alter ego claim may properly lie to reverse veil pierce from an individual to a trust. However, "Virginia does recognize the concept of outsider reverse piercing" and has applied it in other contexts. *C.F. Tr., Inc. v. First Flight L.P.*, 580 S.E.2d 806, 810 (Va. 2003). Thus, for the limited purposes of determining these Motions to Dismiss, the Court will assume that, if Virginia were to recognize a cause of action for reverse veil piercing against a trust, it would apply the same legal standard as to corporate entities. For the reasons stated herein, even assuming this position, the Trustee's allegations fail to state a claim for alter ego and, as such, Count I of the Amended Complaint must be dismissed without prejudice.

Under Virginia law, "the same factors for traditional veil piercing apply to reverse veil piercing." *Oliver v. Omega Protein, Inc.*, No. 3:10CV47-REP-DWD, 2011 WL 1044403, at *4, 2011 U.S. Dist. LEXIS 27621, at *1 (E.D. Va. Jan. 31, 2011), *report and recommendation adopted*, No. 3:10CV47, 2011 WL 976619, 2011 U.S. Dist. LEXIS 27623 (E.D. Va. Mar. 16, 2011) "[E]ven though no single rule or criterion is dispositive," *C.F. Tr.*, 580 S.E.2d at 811, "piercing the corporate veil requires both (i) that there be a unity of interest and ownership such that the separate personalities of the corporations no longer exist and (ii) that the entity sought to be held liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage," *Job v. Simply Wireless,*

---

[9] "Although [the Trustee] alleges piercing the corporate veil as a cause of action, as a doctrinal matter it is actually a remedy." *Job v. Simply Wireless, Inc.*, 160 F. Supp. 3d 891, 901 n.11 (E.D. Va. 2015) (citation omitted). However, given that the Trustee fails to allege sufficient facts in support of such remedy, such distinction is without a difference.

*Inc.*, 160 F. Supp. 3d 891, 901 (E.D. Va. 2015). In other words, a "court can pierce the corporate veil only upon a showing that '(1) the corporation was the "alter ego, alias, stooge, or dummy" of the other entity; and (2) "the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime."''' *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 427 (E.D. Va. 2011) (quoting *Buffalo Wings Factory, Inc. v. Mohd*, No. 1:07CV612 (JCC), 2008 WL 4642163, at *6, 2008 U.S. Dist. LEXIS 82247, at *19 (E.D. Va. Oct. 15, 2008)).

The Amended Complaint fails to allege sufficient facts to state a cause of action for alter ego under this standard. Rather, in this case, the Trustee merely alleged that the "Credit Shelter Trust is and/or was dominated and controlled by the Debtor in such a way that she and the Credit Shelter Trust are merely alter egos of each other." Am. Compl. ¶ 17, ECF No. 11 at 6. The Court is "not bound to accept as true a legal conclusion." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). This conclusory statement is insufficient to establish that the Credit Shelter Trust was the "alter ego, alias, stooge, or dummy" of the Debtor, as required under the first prong of the analysis. *See Informatics Applications Grp., Inc.*, 836 F. Supp. 2d at 427 (citation omitted). In support of the Trustee's alter ego claim, the Trustee alleges "[d]espite the spendthrift provisions of the Credit Shelter Trust, the Debtor spent millions of dollars on business and personal expenses . . . ."[10] Am. Compl. ¶ 21, ECF No. 11 at 6. This allegation fails to establish that the Credit Shelter Trust was a "device or sham used to disguise wrongs, obscure fraud, or conceal crime" as required by the second element of veil piercing under Virginia law. *See Informatics Applications Grp., Inc.*,

---

[10] Even assuming arguendo that such did not constitute a legal conclusion, the Trustee's allegation that the "Credit Shelter Trust was used solely for the Debtor's personal benefit and to shield assets from her creditors," Am. Compl. ¶ 18, ECF No. 11 at 6, is inherently contradictory with the Trustee's later allegation that the Debtor "transferred over half a million dollars to her children," Am. Compl. ¶ 21, ECF No. 11 at 6. The Amended Complaint fails to contain any factual allegations concerning how such a transfer or transfers to the Non-Debtor Beneficiaries would benefit the Debtor.

836 F. Supp. 2d at 427 (citation omitted). Rather, the plain import of the Trustee's allegations in the Amended Complaint is that the Debtor improperly utilized the Credit Shelter Trust to pay the Debtor's creditors. *See Buffalo Wings Factory, Inc.*, 2008 WL 4642163, at *7, 2008 U.S. Dist. LEXIS 82247, at *22 ("Virginia law requires not just the wrongful use of the corporate form, but also that the abuse of form is directed at perpetrating another wrong."). As such, the Trustee has failed to state a claim for alter ego under Virginia law and Count I must be dismissed without prejudice.[11]

## II.   Count II-V: Avoidance of the Debtor's Disclaimer and Resignation as Trustee Pursuant to Section 548 of the Bankruptcy Code and Sections 28-3104 and 28-3105 of the D.C. Code.

Counts II through V of the Amended Complaint seek to avoid certain pre-Petition Date actions of the Debtor as fraudulent transfers under section 548 of the Bankruptcy Code and actual or constructively fraudulent conveyances under section 28-3104 and 28-3105 of the D.C. Code. Counts II and III concern the Debtor's resignation as trustee of the Credit Shelter Trust and Counts IV and V regard the Debtor's disclaimer of the Family Trust upon Guy's death.

The Court finds that the Trustee has stated a claim that the Debtor's resignation as trustee of the Credit Shelter Trust may be a fraudulent transfer under applicable bankruptcy and non-bankruptcy law. Although not raised by the parties and while the facts are readily distinguishable

---

[11] To survive a motion to dismiss, the Trustee must explain the factual background for why he claims that the Debtor used the Credit Shelter Trust as her "personal piggy bank." *See* Am. Compl. ¶ 12, ECF No. 11 at 5. For example, the Trustee's only substantive factual allegation concerning a disbursement on behalf of the Debtor that contains any specificity is the allegation that the Debtor used the Credit Shelter Trust to purchase a luxury home in Washington, D.C., then sold the home and placed the proceeds in the Credit Shelter Trust. Am. Compl. ¶ 12, ECF No. 11 at 5. These allegations are facially unclear as to whether the Debtor, in her capacity as trustee of the Credit Shelter Trust, caused the Credit Shelter Trust to purchase a luxury home and, then, the Debtor, in her capacity as trustee of the Credit Shelter Trust, sold the home and directed the sales proceeds to be placed back into the Credit Shelter Trust or whether the Debtor, in her capacity as trustee of the Credit Shelter Trust, caused the Credit Shelter Trust to disburse funds to the Debtor with which the Debtor purchased a home in her individual capacity and then later deposited potentially non-exempt sales proceeds into the Credit Shelter Trust. The Amended Complaint is also devoid of any indication of when such transactions occurred.

from the case at bar, the Court finds *Allen v. Crawford* (*In re Crawford*), 172 B.R. 365 (Bankr. M.D. Fla. 1994) to be instructive for purposes of deciding these Motions to Dismiss.[12] In *Crawford*, the Chapter 7 trustee had previously obtained judgment against the non-debtor defendant for an unrelated voidable preference. *Id.* at 366. Unable to otherwise satisfy the judgment, the Chapter 7 trustee attempted to levy upon a revocable trust created by the non-debtor defendant and which was funded exclusively by the otherwise voidable preference. *Id.* After the trustee's demand, the non-debtor defendant amended the trust to convert it to an irrevocable trust and to resign as trustee. *Id.*

In ruling in favor of the trustee on the merits, the *Crawford* court "concluded that the execution of the amendment to the Trust Agreement did in fact effectively operate as a transfer of the Defendant's interest in the corpus of the trust" because "[b]y relinquishing her trust powers and relinquishing her dominion and control over the trust assets the Defendant 'part[ed] with an . . . interest in an asset' and but for the Trust Amendment she could have invaded the assets in the trust at any time. *Id.* at 367 (alterations in original). In reaching such a conclusion, the court relied upon the Florida definition of "transfer" which mirrors the definition of "transfer" in the Bankruptcy Code and in the D.C. Code. *Compare* Fla. Stat. § 726.102(14), *with* 11 U.S.C. § 101(54); D.C. Code § 28-3101(12). The court then found that upon the facts of the case, the transfer effectuated by the execution of the trust amendment was both actual and constructive fraud. *Id.* at 367-68.

It is unclear from *Crawford* whether the fraudulent transfer consisted of both the resignation of the trustee and the amendment from an irrevocable to a revocable trust or if either

---

[12] At the Hearing, the parties agreed that Virginia substantive law applies to the construction of the Trust Declaration, but no party has raised whether D.C. or Virginia substantive law should apply to determine whether either the resignation or the disclaimer constitutes a fraudulent conveyance. The Court is not inclined to address this issue sua sponte.

event would have otherwise qualified as a fraudulent transfer in the absence of the other. The Court determines that to be a factual issue to be addressed at trial, but that the Trustee has stated a claim for a fraudulent transfer under both section 548 of the Bankruptcy Code and sections 28-3104 and 28-3105 of the D.C. Code, as made applicable to this Adversary Proceeding by section 544(b) of the Bankruptcy Code based upon the Debtor's resignation as trustee.

The more complicated issue is whether the Trustee has stated a claim for a fraudulent transfer for the Debtor's disclaimer.[13] The Court finds that the Amended Complaint does not. Under either bankruptcy law or state law, in order to state a cause of action for fraudulent transfer, the Debtor must have transferred an interest in property. *See* 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . of an interest of the debtor in property . . ."); D.C. Code § 28-3101(12) (defining "transfer" to mean "every mode . . . of disposing of, or parting with, an asset or interest in an asset"). Accordingly, for the Trustee to pursue either a fraudulent transfer under section 548 of the Bankruptcy Code or a fraudulent conveyance under state law, the Trustee must allege that the Debtor (1) transferred (2) an interest she had in property. However, the Amended Complaint fails to allege that the Debtor effectively transferred her interest in property through the disclaimer and, therefore, Counts IV and V must be dismissed.

By his Amended Complaint, the Trustee alleges that the Family Trust was funded by the MetLife/Brighthouse Policy and the Genworth Policy. Am. Compl. ¶ 7, ECF No. 11 at 4. But the Trustee does not allege that the Family Trust contained any other assets at the time of the disclaimer. The Trustee further alleges that the right of disclaimer arose only for a surviving

---

[13] As the disclaimer occurred in Virginia and the Credit Shelter Trust is governed by Virginia law, it appears to the Court that Virginia law, as opposed to D.C. law, would likely control whether the disclaimer constituted a voidable fraudulent conveyance under section 544(b) of the Bankruptcy Code. But, for the reasons stated in note 12 *supra*, the Court will not make that determination now. Given the foregoing, there can be no question that the disclaimer itself is governed by Virginia substantive law.

spouse, in which case the assets of the Family Trust were placed in the Credit Shelter Trust for the benefit of the surviving spouse. Am. Compl. ¶ 9, ECF No. 11 at 4. The Trustee alleges that after Guy's death, the Debtor disclaimed her right to the Family Trust on August 4, 2017. Am. Compl. ¶ 10, ECF No. 11 at 4. The Trustee does not challenge the effectiveness of the Debtor's disclaimer. Taking all of these allegations in the Amended Complaint as true, the Trustee has alleged that the disclaimer caused the MetLife/Brighthouse Policy and the Genworth Policy to be paid to the Credit Shelter Trust rather than the Family Trust and that no other res existed in the Family Trust at the time of the disclaimer.[14]

As a preliminary matter, pursuant to Virginia law, "[a] disclaimer . . . is not a transfer." Va. Code § 64.2-2603(G). As such, Counts IV and V of the Amended Complaint must fail as a matter of law. However, even assuming arguendo that the disclaimer could effectively qualify as a transfer, the disclaimer did not "transfer" any interest that the debtor had. In *Abbott v. Willey*, 479 S.E.2d 528 (Va. 1997), the Supreme Court of Virginia held that the statutory right of disclaimer specifically permits a person to disclaim an interest in the proceeds of a life insurance policy to the detriment of her creditors.[15] There, the court rejected the creditors' argument that such disclaimer was void or voidable as a voluntary or fraudulent conveyance. *Id.* at 530. Rather, the Court interpreted the plain language of the statute to provide that the heir "had an "absolute right . . . to disclaim any interest she may have had in the insurance policy, and as a result of such disclaimer, she acquired no interest in the insurance proceeds because the disclaimer related back to the effective date of the insurance policy." *Id.*

---

[14] At the Hearing, the Trustee argued additional facts not properly before the Court in considering the Motions to Dismiss, but which the Trustee may wish to include in a subsequent complaint.

[15] In its decision, the Supreme Court was interpreting a prior version of the statute, which has been recodified as amended. The Court see no reason to find that the amendment would change the Supreme Court of Virginia's analysis.

The Debtor here had an absolute right to disclaim her interest in the Family Trust, which, by the Trustee's allegations in the Amended Complaint, was funded solely by the MetLife/Brighthouse Policy and the Genworth Policy. Am. Compl. ¶ 7, ECF No. 11 at 4. As such, by operation of Virginia law, the Debtor would not have acquired any interest in either insurance policy. In the absence of obtaining an interest in the policies, even if the disclaimer were a "transfer," the disclaimer would not transfer an interest of the Debtor in property. For these reasons, the Court will dismiss Counts IV and V of the Amended Complaint without prejudice.

## III. Count VI: Substantive Consolidation

By Count VI of the Amended Complaint, the Trustee requests that this Court substantively consolidate the Debtor's estate and the Credit Shelter Trust. "Although the Bankruptcy Code nowhere specifically authorizes consolidation of separate estates, courts may order consolidation by virtue of their general equitable powers."[16] *Drabkin v. Midland-Ross Corp.* (*In re Auto-Train Corp., Inc.*), 810 F.2d 270, 276 (D.C. Cir. 1987). As this Court has previously held, the party seeking substantive consolidation must allege "(i) whether creditors dealt with the entities as a single economic unit and 'did not rely on their separate identity in extending credit,' or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors." *In re S. Terrace, L.P.*, No. 98-00107, 1998 WL 1819083, at *2, 1998 Bankr. LEXIS 1975, at *4 (Bankr. D.D.C. Feb. 5, 1998) (quoting *Union Savings Bank v.*

---

[16] In *Law v. Siegel*, the Supreme Court limited the use of the bankruptcy court's equitable powers under section 105 of the Bankruptcy Code "may not contravene specific statutory provisions." 571 U.S. 415, 421 (2014). It remains an open issue whether the use of substantive consolidation of debtors and non-debtors impermissibly circumvents section 303 of the Bankruptcy Code and a question that this Court need not address at this moment. However, the Court cautions the Trustee that the Trustee may face the additional legal hurdle of whether the Credit Shelter Trust would qualify as a debtor pursuant to section 109(b) of the Bankruptcy Code in the absence of any allegation that the Credit Shelter Trust is a "business trust" within the meaning of the Virginia Business Trust Act, as codified in Chapter 14 of Title 13.1 of the Virginia Code. *See* 11 U.S.C. §§ 101(9)(A)(v), 101(41), 109(b).

*Augie/Restivo Baking Co.* (*In re Augie/Restivo Baking Co., Ltd.*), 860 F.2d 515, 518 (2d Cir. 1988)).

The Trustee has failed to allege either factor here. There is nothing in the Amended Complaint that can be reasonably construed to infer that creditors dealt with the Debtor and the Credit Shelter Trust as a "single economic unit" and "did not rely on their separate identity in extending credit." *Id.* at *2, 1998 Bankr. LEXIS 1975, at *4 (citation omitted). The Trustee has also not alleged that the affairs of the Debtor and the Credit Shelter Trust "are so entangled that consolidation will benefit all creditors." *Id.* at *2, 1998 Bankr. LEXIS 1975, at *4 (citation omitted). At best, the Trustee has alleged improper disbursements from the Credit Shelter Trust to the Debtor and one transaction involving possibly commingled funds.[17] The Trustee has failed to allege sufficient facts to suggest that "the interrelationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any net assets for all the creditors." *Id.* at *2, 1998 Bankr. LEXIS 1975, at *5 (quoting *Chem. Bank New York Tr. Co. v. Kheel*, 369 F.2d 845, 847 (2d Cir. 1966)). Moreover, the Trustee has failed to allege that substantive consolidation of these estates will benefit *all* creditors – the creditors of the Debtor and the creditors of the Credit Shelter Trust.[18] Thus, Count VI must be dismissed with leave to further amend.

---

[17]

Although for the reasons stated in footnote 11 *supra*, the Amended Complaint fails to allege facts from which the Court can reasonably infer commingling did occur.

[18]

For this very reason and based on the allegations in the Amended Complaint, even if the Trustee were able to allege such necessary facts as to survive a motion to dismiss, substantive consolidation of the Debtor and the Credit Shelter Trust may be improvident in this case. Substantively consolidating the Debtor and the Credit Shelter Trust would not simply allow the Trustee access to the trust res to distribute to the creditors of the Debtor, but instead would also require the Trustee to distribute assets of both the Debtor and the Credit Shelter Trust to creditors of both the Debtor and the Credit Shelter Trust. Assuming the allegations of the Amended Complaint are true, the Debtor may be liable to the Credit Shelter Trust and the Non-Debtor Beneficiaries for distributions in violation of the terms of the Credit Shelter Trust. Such liability may be exponentially increased were the trust res, in its entirety, to be substantively consolidated with the Debtor's estate. As such, substantive consolidation may prove merely a pyrrhic victory for the Trustee.

### Conclusion

Therefore, for the reasons stated herein, it is

**ORDERED** that the *TCA TrustCorp America's Motion to Dismiss Amended Complaint on Behalf of Itself as Trustee and the "Credit Shelter Trust"* (ECF No. 12) and the *Motion to Dismiss Amended Complaint* (ECF No. 13) are **GRANTED AS TO COUNTS I, IV, V, AND VI WITHOUT PREJUDICE**; and it is further

**ORDERED** that the *TCA TrustCorp America's Motion to Dismiss Amended Complaint on Behalf of Itself as Trustee and the "Credit Shelter Trust"* (ECF No. 12) and the *Motion to Dismiss Amended Complaint* (ECF No. 13) are **DENIED AS TO COUNTS II AND III**; and it is further

**ORDERED** that, unless otherwise ordered by the Court, the Trustee shall file a second amended complaint no later than **January 25, 2021**; and it is further

**ORDERED** that if the Trustee fails to file such a second amended complaint by **January 25, 2021** without first obtaining leave of this Court, this Memorandum Decision and Order will operate as an adjudication on the merits as to Counts I, IV, V, and VI.

[Signed and dated above.]

Copies to: All recipients of e-orders